UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TAUNO MICHAEL JOHNSON,<br><br>Defendant. | Case No. 25-MJ-00166 |

### EMERGENCY MOTION TO STAY DEFENDANT'S RELEASE AND *DE NOVO* REVIEW OF MAGISTRATE JUDGE'S RELEASE ORDER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, seeks this Court's review of the release order by the Honorable Magistrate Judge Matthew J. Sharbaugh issued on August 29, 2025. Specifically, the United States requests the Court: (i) stay Magistrate Judge Sharbaugh's order releasing the Defendant; and (ii) grant a *de novo* review of Magistrate Judge Sharbaugh's denial of the United States's motion for pre-trial detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (Felony Involving Possession or Use of a Firearm). The Court has the authority to grant a stay to consider this emergency *de novo* review of the Magistrate Judge's order of release.

The Defendant possessed this firearm despite having been convicted of two prior robberies in which he was armed with a firearm.[1] Specifically, in 2017, in Prince George's County, Maryland, the Defendant was sentenced to ten years' incarceration for a Robbery with a Dangerous Weapon conviction. Then, in February 2018, in Anne Arundel County, Maryland, the Defendant

---

[1] The Defendant was previously convicted of Robbery with a Dangerous Weapon in Prince George County, Maryland. Case No. CT161038X. On February 9, 2017, he was sentenced to ten years' imprisonment. The Defendant was convicted of Armed Robbery in Anne Arundel County, Maryland. C-02-CR-17-002481. On February 20, 2018, he was sentenced to twelve years' incarceration, all but eight of which were suspended.

was sentenced to 12 years incarceration (with all but eight suspended) for another Armed Robbery conviction. Notably, the defendant is still on probation for the Anne Arundel County Armed Robbery. (C-02-CR-17-00248). The United States requests that the Court consider the following points and authorities, as well as other information presented at the detention hearing, and order the Defendant to be detained pending trial.

## PROCEDURAL HISTORY

On August 23, 2025, the United States filed a complaint charging the Defendant with Unlawful Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1). On August 26, 2025, an initial appearance was held before the Honorable Magistrate Judge G. Michael Harvey. On August 29, 2025, a detention hearing was held before the Honorable Magistrate Judge Matthew J. Sharbaugh at which time the Government requested that the Defendant be detained pending trial. Magistrate Judge Sharbaugh denied the Government's request, ordering the Defendant be released.

## BACKGROUND

On August 22, 2025, at approximately 4:26 p.m., United States Capitol Police Officer Seth Carll was parked in a police cruiser in the Unit Block of Constitution Avenue NW, Washington, DC. While Officer Carll was monitoring traffic, a maroon Mercury Tracer with heavy tinted windows and bearing Virginia Temporary tag # A72170 drove by. Officer Carll knew that Virginia's alphanumerical sequence was, to-date, much higher than "A," so he ran a Washington Area Law Enforcement System (WALES) check on the tag, which revealed that the tag expired on April 25, 2025.

Officer Carll followed the Tracer into the 100 block of Constitution Avenue NE where he activated his lights and sirens. Approximately three-quarters of a block later, the car came to a stop

at the corner of Maryland Avenue and Constitution Avenue NE. Officer Carll approached the driver's side of the car, where an individual later identified as the Defendant was seated. The Defendant was the sole occupant of the vehicle, and as Officer Carll approached, he placed his hands outside the window with him palms out.

During the stop, the Defendant explained to Officer Carll that he purchased the vehicle with the tags affixed two weeks prior for $1,600. The Defendant provided a Maryland learner's permit to Officer Carll, but did not have proof of registration or insurance. Officer Carll asked the Defendant about his recent arrests, and the Defendant responded that he was on probation for an Armed Robbery. A WALES check of the Defendant confirmed his active learner's permit and his active probation.

Officer Carll also conducted a VIN check of the Mercury Tracer, which revealed it was not registered in DC, Maryland, or Virginia. Officer Carll then ordered the Defendant to turn off the car and get out of the vehicle. After some hesitation, the Defendant complied. As the Defendant exited the vehicle, Officer Carll removed a clip-on knife from the Defendant's pocket. After explaining the proper way to buy and register a car, Officer Carll explained to the Defendant that the Mercury Tracer would be impounded because it was outside of a government building, had an expired registration, and there was no licensed driver with the Defendant.

Officer Carll conducted an inventory search of the vehicle prior to it being towed to the impound lot. In the glove compartment, Officer Carll found a black and silver pistol with the hammer cocked back. The pistol was positioned with the muzzle facing the engine block and the backstrap facing outwards.



**Figure 1: the firearm in the glove box**

The Defendant was placed under arrest at approximately 4:57 p.m. and transported to US Capitol Police Headquarters for processing. The Mercury Tracer was towed to a secure lot.

US Capitol Police Crime Scene Technicians responded, documented the scene, and recovered the pistol. The firearm was recovered and discovered to be a Bersa Thunder 380 handgun, with serial # A56660. It was loaded with one round in the chamber and seven rounds in the magazine, which was capable of holding eight rounds. The firearm was not registered in the District of Columbia.



**Figure 2: the recovered firearm and ammunition**

## ARGUMENT

I. **This Court Has the Authority to Grant the Motion to Stay Release Pending a *De Novo* Review**

The power to stay an order of release is directly related to a district court's authority to review a release order of a magistrate judge. *See, e.g.*, *United States v. Brigham*, 569 F.3d 220, 230 (5th Cir. 2009) ("given that the issue being reviewed involves a person's release from custody pending further legal proceedings, the absence of stay authority could render the district court's review power illusory."). An alternative interpretation would risk allowing the charged defendant the opportunity to "harm[] the community or disappear[] by the time the district court's ruling is rendered and detention is ordered" if the district court determines to order the defendant detained.

*Id.*; *see also United States v. Salazar-Andujo*, 599 F. Supp. 3d 491, 494 (W.D. Tex. 2022); *United States v. Rosales-Villegas*, No. 23-CR-00044, 2023 U.S. Dist. LEXIS 59776, at *5-6, 7 n.1 (D. Nev. Apr. 4, 2023) ("The Court's decision is also based on unanimous caselaw. As the Government notes, 'stays of release are so commonplace and uncontroversial that they are often relegated to a sentence or two in the procedural history of an opinion on the merits of the detention decision.' (Resp. 3:9-24) (collecting cases). Here, the Court is guided by the practical considerations underlying the issuance of a stay as well as caselaw within the Ninth Circuit routinely authorizing stays.").

The United States is aware of the Honorable Magistrate Judge Zia M. Faruqui's recent decision denying a motion to stay in *United States v. Abass*, 25-CR-00079 (TSC), ECF No. 12 (April 11, 2025). Judge Faruqui indicated that although magistrate courts typically suspend an order of release pending the United States's request for *de novo* review of the Magistrate Judge's release order, the Court would no longer do so under the four factors articulated in *Nken v. Holder*, 556 U.S. 418 (2009). The United States, however, is not seeking an extraordinary length of time in which to have the Court consider the merits of a stay which will require significant, detailed briefing, but rather, an emergency stay to present the merits of the requested detention to the district court judge.

Thus, the United States seeks a brief administrative stay of the order of release, and as such, the request should not be analyzed under the *Nken* factors. As this Circuit has noted, "[t]he purpose of [this] administrative stay is to give the court sufficient opportunity to consider the merits of the motion for a stay pending appeal." *Cobell v. Norton*, No. 03-5262, 2004 WL 603456, at *1 (D.C. Cir. Mar. 24, 2004). Such a stay, as the Supreme Court noted recently in *United States v. Texas*, 144 S. Ct. 797, 798 (2024), "buys the court time to deliberate" and does not "typically reflect the

court's consideration of the merits." *Id.* at 798 (Barret, J., concurring). District courts have recognized that administrative stays are also applicable in seeking emergency relief, including in the District of Columbia. *See, e.g.*, *Dellinger v. Bessent*, 2025 WL 450488 (D.D.C. Feb. 10, 2025); *National Council of Nonprofits v. Office of Management & Budget*, 2025 WL 314433 (D.D.C. Jan. 28, 2025); *Order, Texas v. Department of Homeland Security*, No. 24-CV-306 (E.D. Tex. Aug. 26, 2024). As these courts have recognized, "[t]he authority for an administrative stay arises from the All Writs Act and a court's inherent authority to manage its docket." *Dellinger*, 2025 WL 450488 (quoting *Order, Texas,* No. 24-CV-306, at 2).

## II. *De Novo* Review of the Magistrate's Release Order

As an initial matter, a defendant must be detained pending trial, if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(f)(1). The United States must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). In contrast, "[a] determination that an individual is a flight risk must be supported by a preponderance of the evidence." *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019).

Further, 18 U.S.C. § 3145(a) states:

> **(a) Review of a release order –** If a person is ordered released by a magistrate, …
>
> > (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .
>
> The motion shall be determined promptly.

On the United States's motion to review a release order, this Court considers *de novo* the magistrate judge's denial of pre-trial detention. In its discretion, the Court may proceed to

rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised.

In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

*See* S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, the United States respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community or the Defendant's appearance at future proceedings.

### A. Nature and Circumstances of the Offense Charged

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. The Defendant is charged with a serious offense carrying a significant

penalty. For violating 18 U.S.C. § 922(g), the Defendant faces a maximum sentence of up to 15 years imprisonment pursuant to 18 U.S.C. § 924(a)(8). Here, the evidence is clear that the Defendant possessed a loaded firearm in the glovebox of his vehicle. The status of the weapon when it was found is further cause for concern. The firearm was loosely stored in the glove compartment of the Defendant's vehicle. Moreover, the hammer of the firearm was cocked back, and the firearm was loaded with one round in the chamber and seven rounds in the magazine. In other words, it was primed and ready to use.

Additionally, at the time of this offense, the Defendant was on probation for Armed Robbery. (C-02-CR-17-002481). The danger posed by this behavior is exactly why the Bail Reform Act contemplates pretrial detention for this charge. *See United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (J. McFadden) (finding that, in the context of determining the nature and circumstances of the offense, a felon "carrying a loaded firearm—especially if the carrier has a violent history, including a conviction for armed robbery—has the great potential to escalate into violence."). Therefore, this factor weighs heavily in favor of detention.

### B. Weight of the Evidence Against Defendant

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. The Government's case against Defendant is strong. The Defendant was the sole occupant of the vehicle that the firearm was recovered in. Additionally, the Defendant claimed ownership of the vehicle, stating that he purchased the vehicle two weeks prior. The firearm was recovered in the glove compartment. The firearm was positioned with the muzzle facing the engine block, easily accessible to the driver of the vehicle. Therefore, the strength of the evidence against Defendant weighs in favor of detention.

The weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

"If the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30. Therefore, the weight and strength of the evidence in the present case increases the likelihood that the Defendant will fail to return to Court and present a danger to the community if released.

**C. History and Characteristics of Defendant**

The third factor, the Defendant's history and characteristics, weighs in favor of detention because the Defendant has a history of unlawfully possessing firearms and violent behavior.

In 2018, the Defendant was previously convicted in Annapolis, Maryland for Armed

Robbery. (C-02-CR-17002481). He was sentenced to twelve years of incarceration with eight years suspended and three years of probation. According to the Application for Statement of Charges, the Defendant entered a Shell gas station posing as a customer and approached the register with a drink. The Defendant pointed a revolver at the Shell employee and threw a bag onto the counter for the employee to put money into. Ultimately, $800 was stolen from the Shell gas station.

Notably, the Defendant was on probation for this Armed Robbery conviction at the time of the present offense. As part of the Defendant's conditions of parole, the Defendant was banned from possessing any dangerous weapons or firearms and was required to obey all laws. *See* Exhibit 1 at 2. Both of those conditions were violated by the Defendant's present conduct. The Defendant's inability to follow probation's rules of supervision should give this Court serious pause about whether the Defendant will follow any rules imposed by this Court pending trial.

In 2017, the Defendant was sentenced to ten years of confinement for Robbery with a Deadly Weapon in Prince George County, Maryland. (CT161038X). According to the Application for Statement of Charges, the Defendant entered a Sunoco store and posed as a customer. When store employees opened the cash register to complete a transaction, the Defendant brandished a silver revolver and pointed it at the employees. The Defendant then jumped over the register and took approximately $2,000 from the employees and fled the scene.

The Defendant's prior convictions demonstrate the Defendant's inability to avoid firearms and a pattern of violent behavior involving not just the possession of firearms, but the brandishing of a firearm.

It is also worth noting that at the time of the present offense, the Defendant did not possess a valid license and the vehicle's registration was expired. While these violations may seem minor

– especially considering the Defendant's more serious convictions – they demonstrate the Defendant's inability to follow basic rules. Therefore, the history and characteristics of the Defendant weigh in favor of detention.

### D. Danger to the Community

The fourth and final factor, the danger to any person or the community posed by Defendant's release, similarly weighs in favor of detention. Despite knowing he was a convicted felon, Defendant possessed a loaded firearm, with a round chambered. The state of readiness of that firearm demonstrates that Defendant was ready, willing, and able to commit another crime against members of the community. *United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public.").

As previously addressed above, the Defendant exhibits a pattern of violent, firearm related offenses from his Armed Robbery and Robbery with a Deadly Weapons convictions in Maryland. Therefore, this factor weighs in favor of detention.

## III.  A Third-Party Custodian Cannot Ensure the Safety of the Community.

Magistrate Judge Sharbaugh found that the Defendant's significant other could effectively supervise the Defendant and mitigate the danger he presents. The United States respectfully disagrees.

While courts have endorsed third-party custodians, such a custodian makes more sense where a defendant is young and willing to submit to an authority figure. *See United States v. Long*, 2020 WL 2434588 at *2 (W.D. Pa.) ("An authority figure who enters the picture and takes charge of a young and unsophisticated offender provides greater protection to the community than does a third-party custodian who is essentially a peer (or spouse in this case) of the defendant, especially

one who is socially affiliated with the defendant during the time the defendant is alleged to have committed very offenses charged.").

Indeed, the challenge faced by third party custodians, who are essentially being asked to act like correctional officers twenty-four-hours a day for someone they care for deeply, has repeatedly been recognized by courts in this jurisdiction. *See* Order (ECF No. 14), *United States v. Joyner*, 22-CR-252 (D.D.C. Aug. 3, 2022) (reversing the magistrate court's order releasing the defendant to a third-party custodian); Order (ECF No. 55), *United States v. Handy*, 22-CR-164 (same), *aff'd*, Case No. 22-3045, D.C. Cir. (2022); Order, ECF 54, *United States v. Charles Cunningham*, 23-CR-7 (D.D.C. March 13, 2023) ("third-party custodian, no matter how competent or dedicated, cannot stand in the shoes of the defendant. Nor should a third-party custodian be cast in the role of jailer…. Mr. Cunningham's custodians cannot supervise his behavior on a 24/7 basis."); Order, ECF 18, *United States v. Trevor Wright*, 22-CR-410 (D.D.C. Dec. 23, 2022) ("family members are not correctional officers. Nor should they be expected to play that role").

To convert Defendant's significant other into his warden is simply not a viable solution for keeping the community safe.

## **CONCLUSION**

The Defendant is eligible for pretrial detention. All four of the Bail Reform Act factors weigh in favor of pretrial detention, and the Defendant poses a serious risk of flight and danger to the community. For these reasons, the United States respectfully requests that: (i) the Defendant be detained pending trial; (ii) a hearing be set as soon as practicable; and (iii) Magistrate Sharbaugh's release order be stayed pending this Court's review.

        Respectfully submitted,

        JEANINE FERRIS PIRRO
        United States Attorney

By:    /s/ *Jessica Bove*
        JESSICA BOVE
        PA Bar # 328892
        Assistant United States Attorney
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-7566
        Jessica.Bove@usdoj.gov